IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| OSBALDO JOSE-NICOLAS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 20 C 5507 |
| ) | |
| WEXFORD HEALTH SOURCES, INC., ) | |
| DR. JOHN TROST, DR. STEPHEN ) | |
| RITZ, DR. MOHAMMAD SIDDIQUE, ) | |
| and JOHN DOES and JANE DOES, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

In September 2020, Osbaldo Jose-Nicolas, who was then imprisoned at Stateville Correctional Center in Joliet, filed a *pro se* lawsuit against Wexford Health Sources, Inc. (misnaming it as Wexford Inc.) and several medical doctors affiliated with Wexford. Jose-Nicolas alleged that while imprisoned at Menard Correctional Center from 2016 through 2018, he was given woefully inadequate treatment for stomach pain: his complaints were largely ignored, and he submitted grievances to no avail. Jose-Nicolas was transferred to Stateville in February 2019. He says that once there, his pain kept getting worse, and he was referred for outside testing and consultation. Jose-Nicolas's *pro se* complaint alleged, however, that Wexford personnel at Stateville unreasonably delayed appropriate treatment as well. Eventually when other treatment failed he was given gall bladder surgery at an outside hospital. In his *pro se* complaint, Jose-Nicolas named as defendants, in addition to Wexford, three physicians who he

said were at Menard and one he said was a doctor at Stateville, identified as "Dr. A." His complaint specifically asserted a claim against "Dr. A," alleging that, at Stateville, Dr. A had wrongfully delayed surgery.

After somewhat extended proceedings to resolve issues relating to assessment of the filing fee under the Prison Litigation Reform Act, the Court, in early April 2021, allowed Jose-Nicolas's case to proceed following review under 28 U.S.C. § 1915A. The Court then recruited counsel, an attorney in Chicago, and authorized counsel to file an amended complaint.

Recruited counsel filed an amended complaint in August 2021. They did not name as a defendant "Dr. A"—who likely was not a doctor but rather a physician assistant—but rather named only Wexford and the three physicians originally sued by Jose-Nicolas. The allegations against the three doctors, of course, involve what they did and did not do vis-à-vis Jose-Nicolas when he was incarcerated at Menard. But the complaint also includes an extended discussion of Jose-Nicolas's medical treatment after his transfer to Stateville. *See* Am. Compl. ¶¶ 41-54. A fair reading of the amended complaint indicates at least three purposes for the Stateville-related allegations. One is that Jose-Nicolas is alleging that continued unwarranted delays in appropriate treatment took place even after his transfer to Stateville (as Jose-Nicolas had alleged in his *pro se* complaint), even if he is not at this point asserting a claim against any Wexford-affiliated personnel at Stateville. In this regard, it is noteworthy that Jose-Nicolas asserts a *Monell* claim against Wexford, alleging that it has a policy of condoning denial of adequate medical care. This claim, fairly read, may be premised partly on the continued delays in treatment while Jose-Nicolas was imprisoned at Stateville. A

2

second purpose for the Stateville-related allegations is that they establish that Jose-Nicolas's injuries continued for a significant period, and worsened, while he was at Stateville. A third purpose is that what ultimately took place at Stateville is offered as demonstrating the appropriate treatment (referrals for outside consultation and, ultimately, surgery) that Jose-Nicolas contends should have been provided to him at Menard.

The defendants—which the Court will refer to collectively as Wexford—have moved to dismiss for improper venue and have moved in the alternative to transfer the case to the Southern District of Illinois, where Menard is located.

1.     **Venue**

Venue is proper in this district, if at all, only under 28 U.S.C. § 1391(b), under which venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred . . . ." 28 U.S.C. § 1391(b). Wexford argues that Jose-Nicolas's claims concern his medical treatment at Menard, which is in the Southern District of Illinois.

The Court overrules Wexford's motion to dismiss. Venue may be proper in more than one district. *See Armstrong v. LaSalle Bank Nat'l Ass'n*, 552 F.3d 613, 617 (7th Cir. 2009). It may well be that more relevant events took place at Menard, but section 1391(b)(2) does not require a majority of the events to have taken place in a district, but rather a substantial portion. *See, e.g., Wm. Wrigley Jr. Co. v. Terphogz, LLC*, No. 21 C 2357, 2021 WL 5356229, at *6 (N.D. Ill. Nov. 17, 2021); *Nicks v. Koch Meat Co.*, 260 F. Supp. 3d 942, 952 (N.D. Ill. 2017) (St. Eve, J.). "To be 'substantial,' it is enough to establish that the events that took place in Illinois were 'part of the historical predicate

3

for the instant suit.'" *Master Tech Prods., Inc. v. Smith*, 181 F. Supp. 2d 910, 914 (N.D. Ill. 2002) (quoting *Uffner v. La Reunion Francaise, S.A.*, 244 F.3d 38, 42 (1st Cir. 2001)).

Though the Seventh Circuit has not opined on the point, there is significant authority for the proposition that venue—like jurisdiction—is measured at the time the lawsuit is filed and is not affected by later developments. *See, e.g., Abdul-Ahad v. Top Tobacco Co.*, No. 99 C 4067, 1999 WL 967514, at *3 n.2 (N.D. Ill. Oct. 6, 1999). *Talsk Research Inc. v. Evernote Corp.*, No. 16 C 2167, 2017 WL 4269004, at *3 n.3 (N.D. Ill. Sept. 26, 2017); *Daughetee v. CHR Hansen, Inc.*, No. 09-cv-41, 2011 WL 113868, at *4 (N.D. Iowa Mar. 25, 2011) (collecting cases). If so, it is beyond question that venue is proper in this District. When he filed suit, Jose-Nicolas named a Stateville-based defendant, "Dr. A," asserted a claim against that defendant, and made allegations regarding improper and delayed medical treatment while incarcerated at Stateville, which is in the Northern District of Illinois. Those allegations unquestionably formed a substantial portion of the events giving rise to Jose-Nicolas's claims as originally asserted.

The Court reaches the same result even if the appropriate focus is on the current version of the plaintiff's claims rather than on the complaint that initiated the lawsuit. As the Court has discussed, Jose-Nicolas's current *Monell* claim against Wexford includes significant allegations regarding his treatment at Stateville. Even without that, the events regarding Jose-Nicolas's care at Stateville form a substantial part of the events giving rise to the claim. First, a significant part of his claimed injury occurred there— injury that he alleges was not properly addressed at Stateville for an extended period.

Second, and perhaps just as importantly, the proper treatment that Jose-Nicholas alleges that he ultimately got at Stateville is part of what he expects will demonstrate the inadequacy of his treatment at Menard as well as the feasibility and propriety of that treatment, which he alleges that he should have gotten sooner.

This is sufficient to constitute a substantial portion of the events giving rise to at least one, and likely all of Jose-Nicolas's claims. And even if a "close nexus" between events in the district and the claim is required, *see Daniels v. Am. Bd. of Emergency Med.*, 428 F.3d 408, 422 (2d Cir. 2005), it exists here. *See Johnson v. Creighton Univ.*, 114 F. Supp. 3d 688, 696-97 (N.D. Ill. 2015) (finding venue proper in this district in a similar situation in which the primary challenged medical treatment took place in another district).

**2.    Transfer**

In the alternative to its motion to dismiss, Wexford has moved to transfer the case to the Southern District of Illinois[1] under 28 U.S.C. § 1404(a), which provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district ... where it might have been brought[.]" 28 U.S.C. § 1404(a).

To obtain a transfer under section 1404(a), the moving party must demonstrate that the proposed transferee forum is "clearly more convenient." *Heller Fin., Inc. v.*

---

[1] A stray reference at page 6 of defendants' combined motion/memorandum proposes a transfer to the *Central* District. That would appear to be a scrivener's error, as the opening and closing sentences of the motion/memorandum specifically reference the Southern District (and only that district), along with four other references within the text of the motion/memorandum. Defendants' reply makes no reference at all to the Central District.

*MidWhey Powder Co.*, 883 F.2d 1286, 1293 (7th Cir. 1989); *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219–20 (7th Cir. 1986). "'Unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed.'" *In re Nat'l Presto Indus., Inc.*, 347 F.3d 662, 664 (7th Cir. 2003) (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947) ). "Where the balance of convenience is a close call, merely shifting inconvenience from one party to another is not a sufficient basis for transfer." Research Automation, Inc. v. Schrader–Bridgeport Int'l, Inc., 626 F.3d 973, 978 (7th Cir. 2010).

In evaluating the convenience of the parties and witnesses, a court considers (1) the plaintiff's choice of forum, (2) the situs of material events, (3) the relative ease of access to proof, (4) the parties' convenience, and (5) the witnesses' convenience in litigating in the respective forums. *Amoco Oil Co. v. Mobil Oil Corp.*, 90 F.Supp.2d 958, 960 (N.D. Ill. 2000); *see also Research Automation*, 626 F.3d at 978.

Jose-Nicolas filed the suit in the district that was his home forum at the time, and his choice is entitled to deference, particularly given that material events took place in this district, as just discussed. *See generally Qurio Holdings, Inc. v. DISH Network Corp.*, No. 14 C 7504, 2015 WL 536002, at *1-2 (N.D. Ill. Feb. 9, 2015) (Kennelly, J.).[2]

The material events took place in both districts, as discussed in the previous section of his opinion. It is likely that somewhat more relevant events took place at

---

[2] After the filing of this lawsuit, the Illinois Department of Corrections transferred Jose-Nicolas to Hill Correctional Center, which is in Knox County, in the Central District of Illinois. Hill, which is located in Galesburg, is approximately equidistant from the Chicago courthouse in this district and the East St. Louis courthouse in the Southern District, and about 100 miles closer to the Chicago courthouse than to the Benton courthouse in the Southern District.

6

Menard, but the balance does not tip as strongly as Wexford suggests. The *fact* of the outside treatment and surgery conducted in this District may not be contested, but these events are likely critical in establishing the nature of the treatment that Jose-Nicholas contends he should have gotten earlier and the need for that treatment, which (together with other evidence about Jose-Nicholas's underlying condition) is important circumstantial evidence supporting the proposition that this treatment was called for sooner.

Access to proof—a factor that typically focuses on relevant records—is equal in both districts. In the Court's understanding, a prisoner's IDOC medical records follow him, and currently Jose-Nicolas is about halfway between the Chicago courthouse and the main Southern District courthouse. But the physical location of those exhibits is not reasonably considered as a significant factor.[3] The days when records had to be physically shipped in for trial or even document production during discovery are long gone. Record production is almost entirely done electronically at this point. The Seventh Circuit has acknowledged this in discussing section 1404(a). *See Bd. of Trs., Sheet Metal Workers' Nat'l Pension Fund v. Elite Erectors, Inc.*, 212 F.3d 1031, 1037 (7th Cir. 2000) (discussing section 1404(a); "Easy air transportation, the rapid transmission of documents, and the abundance of law firms with nationwide practices, make it easy these days for cases to be litigated with little extra burden in any of the major metropolitan areas.").

In seeking transfer, Wexford focuses primarily on the location of relevant

---

[3] If it was a significant factor, it would arguably tip against transfer, as Jose-Nicholas's relevant *outside* medical treatment, and thus the records relating to that treatment, are in the Northern District, not the Southern District.

7

witnesses. Two of the three individual defendants, and likely one nurse, were located at Menard at the relevant time and presumably are still located in or near that area (the third individual defendant, Dr. Ritz, evidently lives in the area of Pittsburgh, Pennsylvania). But as the Court has discussed, the course of Jose-Nicolas's treatment and delays in treatment at Stateville are also significant in proving his claims and his damages. The physicians and other medical personnel who rendered care to him and performed surgery on him while at Stateville, all of whom are likely in the Northern District, are likely to be key witnesses both during discovery and at trial. This factor appears to the Court to be a wash.

   The last private-interest factor is the convenience of the parties. Wexford andn Dr. Ritz (and any Wexford-corporate witnesses) are located in western Pennsylvania, so it would be difficult to say that it is more convenient for the company or Dr. Ritz to litigate in the Southern District than in Chicago. Litigating in the Southern District would plainly be more convenient for two of the individual defendants currently named. But litigating in the Northern District is significantly more convenient for Jose-Nicolas, given that this Court—via its Trial Bar pro bono attorney appointment program—recruited counsel for him from this district. Jose-Nicolas now has an established relationship with counsel that would risk disruption if the case were transferred. Though not a significant factor, the Court considers it worthy of some consideration, in contrast to situations where the plaintiff has chosen its own counsel, where consideration of this factor would allow a plaintiff to manipulate forum selection. *Compare, e.g., SEC v. Kasirer*, No. 04 C 4340, 2005 WL 645246, at *2 (N.D. Ill. Mar. 21, 2005) (Kennelly, J.). In sum, the party-convenience factor may tilt toward transfer, but only slightly.

The only "public interest" factor cited by Wexford involves its contention that this is a dispute about Menard and should be resolved in that locale. For the reasons previously discussed, the Court respectfully disagrees. The Court also notes that there is a good chance that Wexford corporate policy regarding outside medical treatment and surgery is reasonably likely to be a significant focus of the case. Any such policy would not have been centralized at Menard, and any corporate-level decision-making likely was done out of state.

In sum, Wexford has failed to show that balance tilts strongly in its favor (as required) or that the Southern District is "clearly more convenient." The Court therefore denies its motion to transfer.

## Conclusion

For the reasons stated above, the Court denies defendants' motion to dismiss or to transfer [dkt. no. 43]. Prior to the January 5, 2022 telephonic status hearing, counsel should discuss and attempt to agree upon a discovery and pretrial schedule to propose to the Court.

Date: January 2, 2022

_____
MATTHEW F. KENNELLY
United States District Judge